UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| JUDITH L. WELLINGTON, ) | Case No. 11-41711-659 |
| ) | Chapter 7 |
| ) | |
| Debtor. ) | **PUBLISHED** |

### O R D E R

The matter before the Court is the United States Trustee's Amended Motion to Dismiss Pursuant to 11 U.S.C. §§ 707(b)(1) and (b)(3) and Debtor's Response to the United States Trustee's First Amended Motion to Dismiss Pursuant to 11 U.S.C. Sections 707(b)1) [sic] and (B)[sic](3). A hearing was held on October 31, 2011 at which the United States Trustee appeared by counsel and Debtor appeared in person and by counsel. The matter was taken under submission. Upon consideration of the record as a whole, the Court makes the following **FINDINGS OF FACT**:

Debtor Judith L. Wellington (hereinafter "Debtor") is a mechanical engineer with Monsanto Company where Debtor has been employed since October 2005. Prior thereto, Debtor was employed with Anheuser Busch. Debtor was unemployed between her job with Anheuser Busch and Monsanto Company from February 2005 through October 2005. During Debtor's period of unemployment, Debtor took two loans from her Anheuser Busch 401(k) plan and amassed substantial credit cards debt.

Debtor and her former spouse bought Debtor's Residence in September 1993 for approximately $500,000.00. Debtor's Residence is a one and one-half story, 4,200 square-foot, four bedroom, three and one-half bathroom house with a pool and spa. Debtor and her former spouse divorced in September 2004. Debtor received ownership of the Residence pursuant to the divorce decree. At that time, similar houses in the same neighborhood of the Residence were sold at approximately $800,000.00. In 2007, Debtor took a line of credit loan with U.S. Bank, secured by Debtor's Residence, in the amount of $55,000.00.

The value of Debtor's Residence has since drastically declined. In early 2010, Debtor listed the Residence for sale and obtained one offer at $660,000.00 but was nonetheless unable to close. Debtor has since tried to obtain a loan modification and in January 2011, Debtor entered the preliminary stages of a loan modification which required a monthly payment of $3,687.13. Debtor determined that this payment was too high and thus declined to enter into this loan modification. At that time, Debtor wanted a mortgage payment of $2,500.00.

Debtor filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code on February 28, 2011. Debtor indicated in her Petition that her debts are primarily consumer debts. On May 10, 2011, Debtor filed an Amended Schedule I, an Amended Schedule J and an Amended Chapter 7 Statement of Current Monthly Income and Means-Test Calculation. Debtor's Schedule A indicates that the current value of Debtor's Residence is $600,000.00 with secured claims against the Residence in the amount of $689,694.00. Debtor's Schedule B indicates that Debtor has a 401(k) plan with a value of $30,000.00. Debtor's Schedule D indicates that both a 2003 debt with IndyMac Bank in the amount of $636,000.00 and a 2007 debt with U.S. Bank in the amount of $53,694.00 are secured by Debtor's Residence. On March 31, 2011, this Court granted IndyMac's Motion to Lift the Automatic Stay concerning Debtor's Residence. Debtor testified that she would like to keep her Residence if she is able to come to an agreement with IndyMac. Debtor also testified that she would especially like to keep her Residence because it is the only home her children know, she would like her children to have their own room and Debtor needs the space to house both her and her possessions. Debtor has three children, ages 23, 19 and 16. Debtor testified that Debtor can have all three of her children residing with her at any time because while her older son is currently in graduate school, he sometimes comes home. Debtor would also like to remain in her current school district because Debtor's youngest son has learning disabilities for which he receives special educational assistance from the school he attends.

The United States Trustee (hereinafter "UST") reviewed Debtor's Amended Schedules and made adjustments. The following charts represent a comparison between what was reported by

2

Debtor and the adjustments made by the UST.

| Debtor's Schedule I | | |
|---|---|---|
| *Item* | *Debtor's Schedule I* | *US Trustee's Adjustment* |
| Gross Monthly Income | $11,583.70 | $11,183.70 |
| Taxes and Social Security | $2,548.85 | $2,548.85 |
| Insurance | $811.42 | $147.52 |
| Group Life Insurance | $34.97 | $0 |
| SIP Loan 1 | $330.66 | $0 |
| SIP Loan 2 | $261.69 | $0 |
| United Way Contribution | $83.45 | $83.45 |
| Debtor's Net Monthly Income | $7,512.69 | $8,403.91 |

| Debtor's Schedule J | | |
|---|---|---|
| *Item* | *Debtor's Schedule I* | *US Trustee's Adjustment* |
| Mortgage Payments | $4870.71 | $958.00 |
| Clothing/Cleaning | $411.00 | $209.00 |
| Monthly Expenses | $9,555.12 | $5,440.50 |
| Disposable Income | -$2,042.52 | $2,963.41 |
| SIP Loan 1 | $330.66 | $0 |
| SIP Loan 2 | $261.69 | $0 |

Based on the UST's adjustments, the UST determined that in a 60-month Chapter 13 Plan in which deductions for attorney and Chapter 13 Trustee fees are considered, Debtor could pay $166,164.37 to unsecured creditors.

In support of the above adjustments, the UST's financial analyst Ms. Cynthia Moore, CPA, testified on behalf of the UST. Ms. Moore has been a CPA since 1985 and has worked in the UST's Office since 1988. She has been reviewing financial documents for debtors in Chapter 7 cases since then, to the inclusion of assessing documents for abuse of bankruptcy pursuant to Section 707, both before and after the 2005 amendments to the Bankruptcy Code. Ms. Moore testified that she questioned Debtor at the Section 341 Meeting of Creditors about her Amended

3

Schedule I and J.

Pursuant to Debtor's Section 341 Meeting of Creditors testimony, the UST reduced Debtor's income from $11,583.70 to $11,183.70 because since the case has been filed, Debtor's child support was reduced by $400.00 per month as of August 2011. The UST reduced Debtor's insurance from $811.42 to $147.52 because at the Section 341 Meeting of Creditors, Debtor identified all the insurance premiums deducted from her pay which totaled only $147.52. Of the remaining balance in the amount of $663.90, Debtor identified a withholding of over $300.00 per pay period as a 401(k) contribution. The UST's position is that for the purposes of a Section 707(b) calculation, Chapter 7 debtors are not permitted to make voluntary 401(k) contributions and as such, the UST reduced the amount to $147.52. No account for the additional difference in totals was presented to this Court. The UST also reduced Debtor's Group Life Insurance contribution of $34.97 to $0 because these funds were included in the above discussed $147.52 contribution. The UST also reduced Debtor's SIP Loan 1 and SIP Loan 2 which are 401(k) loan repayments from $330.66 and $261.69 respectively to $0 because the UST's position is for the purpose of a Section 707(b) calculation, Chapter 7 debtors are not permitted to make 401(k) loan repayments.

Pursuant to Schedule J, the UST reduced Debtor's Mortgage Payments of $4,870.71 which comprises of a $4,520.71 payment for the first mortgage to IndyMac Bank and a $250.00 payment for the second mortgage to U.S. Bank, to the IRS housing standard for a household of three in St. Louis County which is $958.00. The UST made this reduction because IndyMac has obtained relief from the automatic stay which tends to indicate that Debtor will face foreclosure. Ms. Moore also learned that Debtor has caused additional tax withholding to be taken from her pay, in-part to offset Debtor's loss of mortgage interest payment tax deductions since Debtor has not made a mortgage payment to IndyMac since October 2010.[1] Similarly, the UST reduced Debtor's clothing and dry

---

[1] Debtor testified that she stopped paying her first mortgage to IndyMac Bank in order to use those funds to repay a 401(k) loan that Debtor took during her period of unemployment and to also make 401(k) contributions. Debtor had previously stopped making 401(k) contributions in order to increase her monthly income.

4

cleaning expense from $411.00 to $209.00 because Ms. Moore testified that she has been instructed that a Section 707(b) analysis includes a reasonableness test, and the UST did not receive anything from Debtor to justify an upward departure from the IRS allowances standard for a household of Debtor's size which in this case is $209.00.

Ms. Moore testified that the UST's office has been instructed to use the IRS Standards which are localized standards based on the size of a household and the county in which that household is located. Ms. Moore also testified that on occasion, where a debtor's expenses were low, the UST has raised the amount to the IRS standards for at least the purpose of performing the Section 707(b) analysis. Ms. Moore testified that she is unaware of any standards other than the IRS standards that the UST's office can use for purposes of conducting a Section 707(b) analysis. Ms. Moore further testified that utilization of the IRS Standards is a practice of the National U.S. Trustee Program, not just a local St. Louis practice, which has been extensively advertised and discussed, particularly at CLEs and training sessions conducted by the UST's office.

Based on the UST's adjustments, the UST determined that based on a snap-shot current view of Debtor's finances, in a 60-month Chapter 13 Plan, after reductions for attorney and Chapter 13 Trustee fees are considered, Debtor could pay $166,164.37 to unsecured creditors. The UST submits that Debtor passed the Means Test because her expenses were high and considerably above the IRS Standards. Therefore, the UST argues that had the IRS Standards been used and duplicate deductions as indicated above not been taken, a presumption of abuse would have arisen under Section 707(b)(2). As such, the UST argues that pursuant to Section 707(b)(3), Debtor's case must be dismissed for abuse or must be converted to a case under Chapter 13.

Debtor argues that the hypothetical repayment of the $166,164.37 does not consider any potential deficiency claim after foreclosure of Debtor's Residence and whether Debtor could be successful in a Chapter 13 case in that event. Further, Debtor argues that the Section 707(b) analysis and determination that Debtor should convert to a Chapter 13 does not consider that Debtor's child support will end during the 60 month period, nor does Schedule J provide an

5

opportunity to consider any change in income that will occur more than one year following the filing of Schedule J. Debtor further argues that the UST did not ask Ms. Moore whether she could create a budget and live within the amount allotted by the IRS standard. As such, Debtor argues despite the snap-shot image presented by the UST, in actuality, Debtor cannot afford to fund a Chapter 13 Plan and therefore, Chapter 7 is Debtor's only viable option under the Bankruptcy Code. Moreover, Debtor argues that her 401(k) loan repayment should be considered because if Debtor does not repay these loans, the balance due will be taken from the corpus of the remaining amount in the 401(k) plan, and Debtor will have to bear a 10% penalty and taxation of 30%.

## JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding under 28 U.S.C. §§ 151, 157, and 1334 (2011) and Local Rule 81-9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (2011). Venue is proper in this District under 28 U.S.C. § 1409(a) (2011).

## CONCLUSIONS OF LAW

Section 707(b) provides that "[a]fter notice and a hearing, the court ... may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts ... if it finds that the granting of relief would be an abuse of the provisions of this chapter." 11 U.S.C. § 707(b)(1) (2011). A statutory presumption of abuse arises under Section 707(b)(2) based on the arithmetic used to calculate a debtor's current disposable income on a completed Form B22A. Notwithstanding Section 707(b)(2), a court may nonetheless dismiss a case for abuse under Section 707(b)(3) if the court concludes that based on the totality of circumstances of the debtor's financial situation demonstrates abuse. 11 U.S.C. § 707(b)(3) (2011).

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (hereinafter "BAPCPA") amended Section 707 and in so doing, relaxed the standard for dismissing Chapter 7 cases which the court determined to be an abuse of the Bankruptcy Code. *Ransom v. FIA Card Services, N.A.,* __ U.S. __, 131 S. Ct. 716, 721, 178 L.Ed. 2d 603 (2011); see also H.R. Rep. No.

6

109-31 (I), at 7-8 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 98-99. Specifically, Congress lowered the standard of dismissal from 'substantial abuse' to 'abuse.' BAPCPA also added the 'means test', which is purported to be a formula which arithmetically determines a debtor's ability to repay his or her debt. 11 U.S.C. §§ 707(b)(1), (b)(2); *Morse v. Rudler (In re Rudler),* 576 F.3d 37, 40 (1st Cir. 2009). The means test incorporates a debtor's monthly income and particular deductible expenses such as the cost of housing, utilities, food, clothing and health insurance. "Some of these expenses may be calculated by using national or local standards." *Calhoun v. U.S. Trustee,* 650 F.3d 338, 341 (4th Cir. 2011). Specifically,

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor. . .

11 U.S.C. § 707(b)(2)(A)(ii)(I) (2011).

> ...the debtor's monthly expenses may include an allowance for housing and utilities, in excess of the allowance specified by the Local Standards for housing and utilities issued by the Internal Revenue Service, based on the actual expenses for home energy costs if the debtor provides documentation of such actual expenses and demonstrates that such actual expenses are reasonable and necessary.

11 U.S.C. § 707(b)(2)(A)(ii)(V) (2011).

Section 707(b)(2) permits the deduction of the average monthly payment on account of secured debts in calculating the debtor's current monthly income. 11 U.S.C. § 707(b)(2)(A)(iii) (2011). Section 101(12) defines a debt as a "liability on a claim." 11 U.S.C. § 101(12). Section 101(5) defines a claim as any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5) (2011). Debtor argues that her SIP Loan 1 and SIP Loan 2 payments should be included in the means test calculation because those debts

7

are secured and she will suffer a tax penalty if they are not repaid. The question therefore is whether repayment of a 401(k) loan constitutes a debt under the Bankruptcy Code and thus a payment on account of a secured debt which would be deductible in a means test analysis.

The obligation to repay a 401(k) loan is essentially an obligation to repay a debt to oneself. In the event of non-payment, the plan administrator will consider the non-payment a distribution and will proportionately reduce the balance of the account. This distribution has tax consequences, but a debtor-creditor relationship will not be created as is contemplated in the definition of a debt under the Bankruptcy Code. Therefore, this Court will join the majority of courts which have concluded that repayment of a 401(k) loan is not a debt which can be deducted in a Chapter 7 means test analysis. *In re Mowris,* 384 B.R. 235 (Bankr. W.D. Mo. 2008)(loans against qualified retirement accounts are not secured debts that are deductible from current monthly income under the means test as "payments on account of secured debts", nor do they qualify as "other necessary expenses" that could be deducted from current monthly income under the means test, nor are they special circumstances rebutting the presumption of abuse arising under the means test, and because a debtor's retirement loan repayments would be deductible from disposable income in a Chapter 13 case does not establish special circumstances rebutting the presumption of abuse); *Bolen v. Adams,* 403 B.R. 396 (N.D. Miss 2009)(the debtor's obligation to repay a loan from the debtor's employee retirement plan was not a "debt" as that term was used in the Bankruptcy Code, so that debtor's payments on the loan were not "payments on account of secured debt," which can be deducted in performing a "means test" calculation); *McVay v. Otero,* 371 B.R. 190 (W.D. Tex. 2007); *In re Egebjerg,* 574 F.3d 1045 (9th Cir. 2009); see also *In re Villarie,* 648 F.2d 810 (2d Cir. 1981)(repayment of an advance from a retirement account is not a debt under the Bankruptcy Code and therefore cannot be discharged); *Eisen v. Thompson,* 370 B.R. 762 (N.D. Ohio 2007).

In consideration of the above discussion, Debtor's repayment of her SIP-1 and SIP-2 loans cannot be considered for the purposes of the Chapter 7 means test calculation. It therefore follows that Debtor's current 401(k) contributions also cannot be considered as a deduction. The parties

8

do not dispute that Debtor's Schedules accounted for duplicate insurance deductions which were corrected by Trustee. Based on the culmination of these three factors alone, sufficient cause exists to dismiss Debtor's case for abuse under a totality of the circumstances pursuant to Section 707(b)(3). Therefore,

**IT IS ORDERED THAT** the United States Trustee's Amended Motion to Dismiss Pursuant to 11 U.S.C. §§ 707(b)(1) and (b)(3) is **GRANTED IN PART**, in that Debtor Judith L. Wellington's Chapter 7 Case is **DISMISSED** pursuant to Section 707(b)(3) as abusive under the totality of circumstances; and

**IT IS FURTHER ORDERED THAT** the automatic stays of 11 U.S.C. Section 362 are terminated, and the Chapter 7 Trustee is relieved of her bond requirement in this case and all pending matters are **DENIED** as moot.

/s/ Kathy A. Surratt-States
KATHY A. SURRATT-STATES
United States Bankruptcy Judge

DATED: February 9, 2012
St. Louis, Missouri

Copies to:

Office of the United States Trustee
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Suite 6.353
St. Louis, MO  63102

Judith L Wellington
14859 Brook Hill Drive
St. Louis, MO 63017

Robert E. Faerber, Jr.
230 S. Bemiston, Ste. 600
Clayton, MO 63105

Robert E. Eggmann
Desai Eggmann Mason LLC
7733 Forsyth Boulevard, Suite 2075
Clayton, MO 63105

E. Rebecca Case
7733 Forsyth Blvd.
Suite 500
Saint Louis, MO 63105

Peter Lumaghi
Office of U.S. Trustee
111 S. 10th St., Ste. 6353
St. Louis, MO 63102

9